UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
)
IN RE:                                            )      CHAPTER 7
                                                  )
GLENN MARCELLA,                                   )      CASE NO. 09-22876 (ASD)
                                                  )
        DEBTOR.                                   )
                                                  )
----------------------------------------------------
                                                  )
GILLIAN ORR,                                      )      ADV. PRO. NO. 10-02001
                                                  )
        PLAINTIFF                                 )      RE: ECF No. 1
v.                                                )
                                                  )
GLENN MARCELLA,                                   )
d/b/a THE CENTER STUDIO, INC.,                    )
f/d/b/a THE CENTER STUDIO, LLC,                   )
                                                  )
        DEFENDANTS                                )
----------------------------------------------------

APPEARANCES:

Richard E. Hayber, Esq.                           Counsel for Plaintiff
The Hayber Law Firm, LLC
221 Main Street Suite 502
Hartford, CT 06106

Charles I. Miller, Esq.                           Counsel for Defendants
The Law Office of Charles I. Miller
PMB 108
1245 Farmington Avenue
West Hartford, CT 06107

**MEMORANDUM OF DECISION ON
COMPLAINT TO DETERMINE DISCHARGEABILITY**

Albert S. Dabrowski, United States Bankruptcy Judge

### I. INTRODUCTION

In this adversary proceeding the Plaintiff, Gillian Orr (hereafter, the "Plaintiff"), requests determinations of nondischargeability of debts under Bankruptcy Code §523(a)(6) for damages, interest, costs, and attorney's fees arising from the failure of Glenn Marcella (hereafter, the "Debtor") and/or his fitness club business, The Center Studio, Inc., to pay the Plaintiff's wages in connection with her employment. For the reasons set forth hereafter, the Court concludes that the Plaintiff's claims are dischargeable.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

### III. FACTUAL AND PROCEDURAL BACKGROUND

The facts herein are gleaned from an evidentiary hearing held before the Court on January 25, 2011 (hereafter, the "Hearing"), a post-trial hearing held April 12, 2011 (hereafter, the "Post-Trial Hearing"), a stipulation between the parties, and the files and records of this case and proceeding. In March, 2007, the Plaintiff started working as an independent contractor instructing others in personal training and group exercise for The Center Studio, LLC, a Connecticut limited liability company owned by the Debtor. *See*, *Stipulations of Fact*, ECF No. 62, ¶¶ 1,4-6. Around January 7, 2008, the Debtor dissolved

The Center Studio, LLC and formed a new corporate entity in its place called The Center Studio, Inc. (hereafter, the "The Center Studio"), organized under Connecticut law with the Debtor as both owner and president. *Id.*, ¶ 2,4,7. The Plaintiff continued working for the new business as a personal trainer and group exercise instructor, but around March 17, 2008, the Debtor "reclassified Plaintiff as [a salaried] employee" with the title of General Manager and an annual salary of $40,000, payable at the rate of $1,538.46 gross every two weeks. *Id.*, ¶ 6-9; *see also*, Exhibit 1.[1]

The Plaintiff worked for The Center Studio in that capacity until March 2009. During March 2009, the perfect storm of increased competition, a down economy, and dwindling revenue contributed to the Debtor's inability to fully fund both the payroll obligations of The Center Studio and other expenses[2]. On or about March 18, 2009, the Debtor wrote out a check payable to the Plaintiff in the amount of $1,176.32, the net salary for her employment from March 2, through March 15, 2009, but failed to give the check[3] to the Plaintiff and informed her that he did not have enough money to cover it. Approximately five days later, the Debtor opened an account in his own name at Sovereign Bank with a deposit of $2,500. Exhibit M.

Notwithstanding the Debtor's failure to pay her salary for employment from March 2, through March 15, 2009, the Plaintiff continued to work at The Center Studio for another

---

[1] "Exhibit(s)" refers to documentary evidence admitted in evidence at the Hearing.

[2] Hearing, at 11:46. All references to the record of the hearing held January 25, 2011, are labeled "Hearing Tr. at ____".

[3] The check, numbered 2965, is drawn on a Bank of America account in the name of The Center Studio. Exhibit 1. The Center Studio's daily ledger balance in its Bank of America account in fact reflects a negative balance of ($1,444.08) on March 18, 2009. Exhibit N.

two weeks, from March 16, to March 29, 2009, earning an additional $1,176.34 in net income for that time period. At the end of March, 2009, the Debtor again wrote out a check[4] payable to the Plaintiff, this time for the March 16 through March 29 pay period, but again refused to give the check to the Plaintiff citing a lack of funds to cover it.[5]

As of March 29, 2009, the Debtor owed the Plaintiff $3,076.92 in gross wages for the previous four weeks. At or near that same date he informed the Plaintiff that he was reclassifying her as an independent contractor, and proposed a plan (hereafter, the "Plan") to the Plaintiff by which the arrearage attending her wages would be repaid.[6]  *See*, *Stipulations of Fact*, ¶ 11-13. Pursuant to the Plan, the Debtor proposed to permit the Plaintiff to retain the full fee she earned from conducting personal training sessions, rather than remitting a portion of each fee to the Debtor, which would partially offset the arrearage. *Id.*, ¶ 13.

Attending the change in status from an employee to an independent contractor was the Plaintiff's realization that she needed to obtain her own liability insurance, which she previously had as an independent contractor but which had terminated when she became a salaried employee. The Plaintiff testified that a discounted rate on liability insurance was then available if she provided the State of Connecticut Department of Consumer Protection with the license number of her employer's fitness center on the insurance application.

---

[4]The check, numbered 2978, is drawn on the Bank of America account in the name of The Center Studio. Exhibit 1.

[5]The Center Studio's daily ledger balance in its Bank of America account reflects a negative balance of ($87.40) on March 27, 2009, a positive balance of $386.60 on March 30, 2009, and a negative balance of ($49.96) on March 31, 2009. Exhibit N.

[6]The Plaintiff initially stated that this conversation occurred on April 1 or 2, 2009, but subsequently testified that she did not work for The Center Studio in April 2009. Hearing Tr. at 12:17:35.

When the Plaintiff requested the license number of The Center Studio from the Debtor, she was informed there was no such license, and the conversation escalated. Soon thereafter her employment was terminated.

The parties dispute the reasons for the Plaintiff's termination. The Plaintiff contends that she was retaliated against for inquiring about the license number. The Debtor contends that the Plaintiff was discharged because she was an independent contractor without liability insurance, who refused to teach a spinning (exercise) class. To the limited extent the Debtor's and Plaintiff's testimony is in conflict, as is the case regarding certain facts attending her termination, the Court, having observed the demeanor of these witnesses, specifically credits the testimony of the Debtor over that of the Plaintiff.

By April 29, 2009, the Plaintiff had made several unsuccessful requests for payment of unpaid wages. As previously noted, on or about March 23, 2009, the Debtor opened a new personal account at Sovereign Bank, and during April, 2009, several deposits were made into that account including, $2,000, $450 and $2900, on April 9, 20, and 29, 2009, respectively. Exhibit M. However, the Hearing evidence was inconclusive as to the origin of those deposits. More specifically, the Debtor's Schedule I, filed together with his wife as part of their joint bankruptcy petition, shows sufficient income from his spouse's nursing job to adequately cover deposits made into the Debtor's personal bank account at Sovereign Bank. In addition, the bank records of The Center Studio do not evidence the occurrence of a diversion of assets from that entity.

On April 29, 2009, the Plaintiff filed a Statement of Claim for Wages with the State of Connecticut Department of Labor. Receiving no response from the Debtor, the Plaintiff

commenced a lawsuit[7] against him in the Superior Court for the State of Connecticut alleging, *inter alia*, violations of the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-71b, and retaliatory discharge under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a.

On June 4, 2009, the Debtor paid the Plaintiff the principal amount of her accrued wages from March 2009, but did not pay the Plaintiff's liquidated damages claim of $2,727, nor her attorney's fees or costs. The June 4 payment to the Plaintiff was drawn on the Debtor's personal account at Sovereign Bank rather than The Center Studio account at Bank of America, as the financial condition of The Center Studio had ultimately forced it out of business on June 1, 2009.

The Debtor filed a joint petition with Elizabeth Marcella under Chapter 7 of the Bankruptcy Code on October 7, 2009, and received a discharge on January 13, 2010. On January 5, 2010, the Plaintiff commenced the present adversary proceeding by filing a complaint (hereafter, the "Complaint"), No. 10-02001, seeking determinations of nondischargeability of claims against the Debtor and The Center Studio, alleging occurrence of a "willful and malicious injury" pursuant to Bankruptcy Code Section 523(a)(6).

The Hearing was held on January 25, 2011, after which the Court permitted the parties to file briefs. The Post-Trial Hearing was held on April 12, 2011, after which the Court took the matter under advisement.

---

[7]*Gillian Orr v. Center Studio, Inc. et al.*, Docket No. HHD-CV-09-4044684-S.

## IV. DISCUSSION

### A. Dischargeability of *Claims Against The Center Studio, Inc.* Under § 523(a)(6) (Counts One, Three, Five and Seven)

In Counts One, Three, Five, and Seven of the Complaint, the Plaintiff seeks a determination of nondischargeability of various claims against The Center Studio pursuant to Bankruptcy Code Section 523(a)(6), which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C.A. § 523(a)(6)(2010). The Debtor's bankruptcy petition was filed under Chapter 7 of the Bankruptcy Code; therefore, §727 provides for the Debtor's discharge. Pursuant to that section, corporations such as The Center Studio are not eligible for a Chapter 7 discharge. See, 11 U.S.C. § 727(a)(1) (2010) ("The court shall grant the debtor a discharge, unless the debtor is not an individual").

Because The Center Studio is not eligible to receive a discharge under Chapter 7, and §523(a) is only applicable to "[a] discharge under section 727 [and other sections not applicable here]," §523(a)(6) is inapplicable to The Center Studio. See, 11 U.S.C.A. § 523(a) (2010). Furthermore, the listing of The Center Studio with the "d/b/a," or "doing business as," designation on the bankruptcy petition of the Debtor is insufficient to render The Center Studio a debtor. Section 523(a)(6) specifically applies to "willful and malicious injury *by the debtor,*" 11 U.S.C. § 523(a)(6) (emphasis added). For the foregoing reasons, §523(a)(6) provides no grounds for the Court to determine Counts One, Three, Five, and Seven of the Complaint.

Assuming, *arguendo*, a determination of dischargeability/nondischargeability pursuant to §523(a)(6) to be appropriate as to The Center Studio, the Plaintiff has failed

7

to establish any "wilful and malicious" conduct by that entity, through the Debtor or any other representative. *See* Part IV B, *supra*.

**B. Dischargeability of *Claims Against the Debtor* Under § 523(a)(6) (Counts Two, Four and Six)**

In Counts Two, Four, and Six of the Complaint, the Plaintiff seek determinations of nondischargeability under Bankruptcy Code Section 523(a)(6)[8] of claims against the Debtor "in his individual capacity". Specifically, the Plaintiff alleges that the Debtor's failure to pay wages related to the period March 1 -31, 2009, totaling $2,727, violates the Connecticut Minimum Wage Act (Count Two), that his failure to pay "premium wages" related to the period March 17 - 31, 2009, totaling at least $15,000, violates the Connecticut Minimum Wage Act (Count Four), and that his failure to pay "overtime wages" related to the period March 17 - 31, 2009, totaling at least $15,000, violates the Federal Fair Labor Standards Act (Count Six), and, as to Counts Two and Six, that debts arising therefrom involve conduct that was "wilful and malicious in that it was done with the intent to harm the Plaintiff." ¶ 16 (Each Count). Count Four, however, differs and specifically alleges the Debtor's conduct to be "unreasonable, arbitrary and/or in bad faith". ¶ 16.

As a threshold matter, the Court finds that the Plaintiff has provided insufficient evidence to support her alleged entitlement to "premium" or overtime" wages. And, as previously noted, on June 4, 2009, the Debtor paid the Plaintiff her accrued wages from March 2009, but did not pay the Plaintiff's liquidated damages claim of $2,727, nor her attorney's fees or costs. Accordingly, and at best, the Plaintiff has arguably established a

---

[8] While the individual counts do not separately allege the specific statutory basis for the relief requested therein it is clear that the entire Complaint is founded on §523(a)(6).

technical violation of the Connecticut Minimum Wage Act arising from a failure to timely pay wages triggering further consideration of Count Two only. Nevertheless, as more fully discussed hereafter, the Court finds that the Plaintiff has not satisfied her burden of proving that any debt arising from her claims against the Debtor is the result of "willful and malicious" conduct as that phrase is used in §523(a)(6).

The Court now turns to a more detailed discussion of that central issue in this proceeding – the alleged existence of a "willful and malicious"injury within the purview of §523(a)(6). At the outset, the Court notes that exceptions to discharge are strictly and narrowly interpreted so as to promote the Bankruptcy Code's purpose of providing a fresh start to debtors. See, In re Persechino, 423 B.R. 1, 3 (Bankr. D.Conn. 2010)(Shiff, J.)(citing, e.g., In re Bonnanzio, 91 F.3d 296, 300 (2d Cir.1996)). A plaintiff seeking nondischargeability of a debt under §523(a)(6) bears the burden of establishing the requisite elements by a preponderance of the evidence. See, Crestwood James, LLC v. Persechino (In re Persechino), 423 B.R. 1, 3 (Bankr. D. Conn. 2010)(citing Grogan v. Garner, 498 U.S. 279, 285, 111 S. Ct. 654 (1991); Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006); Fed. R. Bankr. P. 4005). "The 'willful and malicious' nature of the injury may be proved at trial from all the facts and circumstances." In re Picard, 339 B.R. 542, 555 n. 11 (Bankr. D.Conn. 2006)(citing, e.g., Navistar Financial Corporation v. Stelluti (In re Stelluti), 94 F.3d 84, 88 (2d Cir. 2006)).

**A. Willful Injury**

In the seminal case construing the first prong of §523(a)(6), the Supreme Court has held that

> [t]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.

*Kawaauhau v. Geiger*, 523 U.S. 57, 57-58, 118 S.Ct. 974 (1998); *see also, In re Stelluti*, 94 F.3d at 87 (citation omitted).

> Moreover . . . the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'

*Geiger*, 523 U.S. at 61-62; *see also, Staub v. Proctor Hosp.*, — U.S. —, 131 S.Ct. 1186, 1194 n. 3 (2011)("Under traditional tort law, 'intent' ... denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.")(citation omitted).

It is clear from the Supreme Court's holdings and dicta that §523(a)(6) contemplates injury analogous to an intentional tort. Although the Debtor may have breached an employment contract with the Plaintiff by failing to pay her wages that were due, "a breach of contract unaccompanied by tortious conduct . . . does not give rise to a Section 523(a)(6) nondischargeability claim." *In re Picard*, 339 B.R. 542, 554 (Bankr. D.Conn. 2006)(Weil, J.)(citing cases involving breach of contract wherein debts were held dischargeable absent tortious conduct). In *Picard*, the court distinguished its holding from *In re Jercich*, 238 F.3d 1202 (9th Cir. 2001), a Ninth Circuit case involving an employer who withheld wages from an employee, because *Picard* did not implicate tortious conduct, whereas in *Jercich*,

> breach of a contractual duty to pay wages gave rise to a nondischargeable debt under Section 523(a)(6) because prompt payment of wages due an employee is a fundamental public policy under applicable law and, thus, a

bad faith failure to pay the same constitutes a tort

In re Picard, 339 B.R. at 554 (citing Jercich).

Not surprisingly, the Plaintiff seeks this Court's accord with the Ninth Circuit's holding in Jercich, where the Ninth Circuit held a debt owed from an employer to an employee nondischargeable because "the employer. . .. knew both that he owed wages to his employee and that his failure to pay those wages would, with substantial certainty, harm his employee . . . " In re Johnson, 2007 WL 1728721, at *7 (Bankr. D.Mont., June 13, 2007)(citing In re Jercich, 238 F.3d at 1208-1209). However, the Court deems Jercich inapposite to the facts of this case. Notably, the Jercich Court found that the debtor had committed a tort willfully because, inter alia, he had the means to pay wages but refused to do so, see, Jercich, 238 F.3d at 1207. Furthermore, even the Bankruptcy Appellate Panel for the Ninth Circuit has recently limited the holding of Jercich, stating that "Jercich involved an employer who not only failed to pay his employee, but used business funds for personal investments, including a horse ranch . . .," In re Weinberg, 410 B.R. 19, 36-37 (9th Cir. B.A.P. 2009), and who "ruthlessly exploited the corporation's assets and staff," id. at 36. In sharp contrast to the deliberate diversion of substantial corporate assets in Jercich, the Hearing record in this proceeding evidences (1) a gradual decline in the average daily ledger balance of the business as revenue declined during the months of March and April 2009, (2) numerous checks returned during that time for insufficient funds at a cost of $35.00 per occasion,[9] (3) the inability of the company to pay all of its creditors, and (4) deposits into the personal Sovereign Bank that do not appear to be from funds diverted

---

[9]During March 18 - 30, 2009, the Bank of America business account reflects thirteen (13) charges of $35.00 each for "Overdraft(s)". Exhibit N, Statement Period 3/01/09 thru 3/31/09, p. 4.

from The Center Studio's Bank of America business account.

The violation of a strict liability statute such as Connecticut's Minimum Wage Act, Conn. Gen. Stat. § 31-72, does not equate to a finding of willfulness and maliciousness. See, *Crestwood James, LLC v. Persechino (In re Persechino)*, 423 B.R. 1, 3 (Bankr. D. Conn. 2010)(holding that liability under Conn. Gen.Stat. § 22–357, a dog-bite statute which "makes no reference to willfulness or maliciousness as elements to be plead or proven in establishing strict liability," is not entitled to collateral estoppel for nondischargeability under §523(a)(6)).

A breach of contract, or in this case, the violation of a strict liability statute, without conduct akin to an intentional tort, is not sufficient to render a debt nondischargeable. Furthermore, "[t]he mere failure to pay an obligation cannot be a willful and malicious injury in and of itself." *In re Buckallew*, 172 B.R. 927, 932 (Bankr.W.D.Mo. 1994)(a pre-*Geiger* decision citing, *inter alia*, 11 U.S.C. § 523(a)(6); *Barclays American Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir.1985)). To hold that §523(a)(6) is applicable to every failure to pay a debt, even in the absence of intentionally tortious conduct, would essentially render meaningless the protections afforded a debtor by the Bankruptcy Code, and vitiate its underlying purpose of providing relief to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. at 286-87.

> A fundamental policy of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to "start afresh."
>
> *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008)(citation omitted).

12

The present case is also distinguishable from *In re Alessi*, 405 B.R. 65 (W.D.N.Y. 2009), in which a debtor/ex-wife's failure to turn over funds to her ex-husband from the sale of the marital home was held nondischargeable under §523(a)(6). Particularly, the Court in *Alessi* found willful conduct in addition to a mere breach of contract where there was

> not just a failure to pay a debt, but a failure to pay from funds that the debtor had agreed specifically to earmark for that purpose . . .[which were] accessible and not otherwise encumbered, . . . [and where the debtor] deliberately and intentionally refused to turn over the proceeds.

*In re Alessi*, 405 B.R. 65, 67-68 (W.D.N.Y. 2009). In the present case, the Debtor had not earmarked specific company funds for payroll, had encumbered the funds to the point where The Center Studio's bank account had a negative balance on April 1, 2009, *and at various other times, see* Exhibit N, and proposed a payment schedule in an attempt to pay the Plaintiff. Although the payment schedule is not a defense to Connecticut General Statutes Section 31-72, it militates against a finding of willfulness in the context of that requisite finding under §523(a)(6).

Finally, the Plaintiff's reliance on *In re Wong*, 291 B.R. 266 (Bankr. S.D.N.Y. 2003), is also misplaced. In *Wong*, the Court deemed sufficient under §523(a)(6) a claim alleging embezzlement in which a debtor wrongfully transferred property securing an interest of a creditor in order to prevent the creditor from reaching it. *See, Wong*, 291 B.R. at 280-281. The Plaintiff herein avers that the Debtor acted willfully and intentionally by

> diverting funds [from The Center Studio] into a new personal account, [lying] to Plaintiff about his ability to pay her wages, and then us[ing] those available funds for his own personal use.

Pl.'s Trial Brief, at 13. Central to the holding in *Wong* was the specific allegation in the complaint that the debtor "removed the property to injure the Bank" despite the lack of any

13

"personal hatred, spite, or ill-will," *Wong*, 291 B.R. at 280-281. In the present proceeding, there is no evidence of a "diversion of assets", or that the Debtor lied to the Plaintiff about The Center Studio's ability to timely pay her wages. In fact, the evidence is to the contrary, no asset diversion was evidenced, and the financial records of The Center Studio reveal negative account balances and numerous overdrafts during the relevant period.

### B. Malicious Injury

"As used in section 523(a)(6), malicious means wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill-will. Malice may be constructive or implied. Implied malice may be demonstrated by the acts and conduct of the debtor in the context of the surrounding circumstances." *In re Picard*, 339 B.R. 542, 553 (Bankr. D.Conn. 2006)(quoting *Navistar Financial Corporation v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir.1996)). "Even absent personal malevolence, a person will be found to have acted maliciously when that person acts in conscious disregard of his or her duties or without just cause or excuse." *In re Wentland*, 410 B.R. 585, 600 (Bankr.N.D.Ohio 2009)(citation omitted).

The Court finds that the Debtor did not demonstrate any personal malevolence in connection with the relevant events of this case. The Court also finds no conscious disregard by the Debtor of his duty to pay the Plaintiff her wages. Unlike *Jercich*, which involved a debtor who deliberately refused to pay wages while diverting large amounts of his company funds to his personal use, the present case involves a debtor whose company

bank account lacked the funds to cover the paychecks[10].

First, maliciousness is lacking with respect to the Debtor's withholding of the Plaintiff's April 1 paycheck because the Plaintiff continued to work for The Center Studio after her first paycheck was withheld for insufficient funds. The Connecticut Supreme Court has held that

> [w]e cannot conclude as a matter of law . . . that an employer experiencing financial hardship that honestly informs employees that it cannot meet payroll and that does not promise them that future payment will be made is acting unreasonably when it allows employees to continue to work with the hope of future payment.

*Ravetto v. Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 726, 941 A.2d 309, 317 (2008).

The Debtor's conduct in withholding the Plaintiff's March 18 paycheck, while without a valid defense under Connecticut law, is insufficient for a determination of malice in the context of § 523(a)(6). Unlike the second withheld payment, the record fails to support that, while working for The Center Studio during the first two weeks of March 2009, the Plaintiff was aware of the possibility that the Debtor could not fund the payroll of the company. The Plaintiff's wages were due her on March 18, 2009, and Connecticut General Statutes § 31-72 specifically abrogates as a defense to the nonpayment of wages an agreement to defer such payment other than as provided by the statute. Notwithstanding the absence of a valid defense under Connecticut law, however, the surrounding facts and circumstances do not support a finding of maliciousness under

---

[10] Returns of checks for insufficient funds would also incur further charges against the company's bank account, thereby reducing the amount available to ultimately pay employees. *See* fn. 9, *supra* (re numerous overdrafts during March, 2009).

15

§ 523(a)(6).

> Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies. A debtor acts with malice by intending or fully expecting to harm the economic interests of the creditor. A debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances. Thus, it must be established that the debtor intended the consequences of his act to cause harm to the creditor, not simply the act itself.

*Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott)*, 434 B.R. 271, 283 (Bankr. N.D.N.Y. 2010)(internal citations omitted).

The withholding of a paycheck or discharge of an employee are not, standing alone, malicious acts.

> The conduct giving rise to certain causes of action may be inherently malicious, such as malicious prosecution or assault. In other cases, malice may be easily deduced where the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor. However, in cases where a debtor seeks profit or some other benefit, the underlying conduct, however deplorable, would not give rise to liability under §523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [Stelluti].

*Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (citations and quotations omitted). The Plaintiff has failed to establish, by a preponderance of the evidence, such "aggravating circumstances" warranting the conclusion that in withholding the Plaintiff's paycheck, the Debtor intended to keep those earned funds out of the hands of the Plaintiff. Rather, the evidence fully supports that the financially distressed Debtor intended to find a way to pay the Plaintiff.

Finally, the Court finds that the Debtor's opening of a personal checking account at

Sovereign Bank, and his deposit of funds into that account between March and April 2009, is not conclusive of maliciousness. The Sovereign Bank account was opened *after* the Debtor first became unable to fund payroll obligations for The Center Studio, and the record fails to establish that specific funds belonging to The Center Studio were diverted to the Debtor's personal checking account.

The present case is therefore distinguishable from the Second Circuit case on which the Plaintiff relies, *In re Stelluti*, 94 F.3d 84 (2d Cir. 1996), a pre-*Geiger* case in which the joint debtors' diversion of proceeds to a separate account, preventing a creditor from reaching the funds, was held nondischargeable under §523(a)(6). Unlike the present case, the debt in *Stelluti* was determined to be nondischargeable because the Court found "there was no other purpose for [the debtors'] conduct except to harm the interests of [the creditor]." *In re Stelluti*, 94 F.3d at 88.

## V. CONCLUSION

The Plaintiff has not satisfied her burden of proving that any debt arising from her claims against the Debtor is the result of willful and malicious conduct. Consequently, any such debt is dischargeable in the Debtor's present bankruptcy case.

This Memorandum of Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052. A separate Judgment in favor of the Debtor shall enter simultaneously herewith.

Dated: July 6, 2011                                        BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
United States Bankruptcy Judge